# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| LIBERTY INSURANCE CORPORATION, | ) |
|---|---|
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) |
| HNTB CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Liberty Insurance Corporation ("Liberty"), by and through its attorneys of record, seeks a declaration, pursuant to 28 U.S.C. § 2201, that there is no coverage under commercial general liability and umbrella policies issued to HNTB for a California bodily injury case arising out of HNTB's quality assurance role on a bridge construction project, because any such coverage rests solely with HNTB's professional liability insurance, and further states and alleges:

## PARTIES

1. Plaintiff Liberty is an insurance company organized and existing under the laws of the State of Illinois, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts. Liberty is, accordingly, a citizen of Massachusetts and Illinois.

2. Defendant HNTB Corporation ("HNTB") is a corporation organized in Delaware, with its principal place of business in Kansas City, Jackson County, Missouri. HNTB is, accordingly, a citizen of Delaware and Missouri.

## JURISDICTION AND VENUE

3. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, because this dispute is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to this dispute occurred in this District.

5. This is an action for a Declaratory Judgment pursuant to 28 U.S.C. § 2201.

## FACTUAL ALLEGATIONS

6. On or about October 9, 2015, at a construction site in Corona, California, ten individuals, including Silvio DeAnda, were working for a subcontractor when they were injured by the collapse of a bridge.

7. Plaintiffs in the DeAnda case, which proceeded in Riverside County, California, alleged that the bridge collapsed, at least in part, because the bridge deck had become filled with water after one or more rainfall events, which substantially changed the weight of the bridge structure that was being placed at the time of the collapse.

8. Plaintiffs in the DeAnda case alleged that HNTB failed to require the contractors to address the issue of water dripping from the bridge deck before the bridge structure was moved into place.

9. Plaintiffs' expert in the DeAnda case alleged that the HNTB engineer's "failure to conduct a proper inspection to address the source of the water in the bridge and its hazardous effect upon the structure, was negligence and a significant factor in the cause of the collapse."

10. HNTB was engaged to provide "independent quality assurance" services with respect to this project.

11. HNTB supplied one or more engineers to perform these quality assurance services.

12. HNTB's employees who performed the "independent quality assurance" services for the project were engineers who received specialized education, training, and/or certification in engineering.

13. Upon information and belief, HNTB's engineer employees prepared daily inspection completion reports with respect to their observation and oversight of quality assurance and quality control for the project.

14. Upon information and belief, the daily report of inspection from the date of the accident, prepared by an engineer employed by HNTB, documents his independent inspection of supports for the bridge.

15. Plaintiffs in the DeAnda case alleged that HNTB was responsible for confirming that the general contractor handled all items on a "punch list" of deficiencies to be repaired prior to the lowering of the bridge decking.

16. The contract by which HNTB was engaged on the project required HNTB to perform inspections of work and material as described in the work plan and contract.

17. Upon information and belief, in the construction industry it is common practice and procedure for "independent quality assurance," the role performed by HNTB, to include inspections for safety concerns and OSHA compliance and to advise the quality assurance engineers of the contractors to remedy unsafe conditions.

18. Upon information and belief, HNTB was engaged to perform "independent quality assurance" for this project on the basis of its experience, qualifications, and training as an engineering firm.

19. HNTB is insured by an Architects and Engineers Professional Liability Policy issued by Certain Underwriters at Lloyd's of London (the "Lloyd's Professional Liability Policy").

20. The Lloyd's Professional Liability Policy affords coverage for claims of professional liability, errors and omissions by HNTB.

21. The Lloyd's Professional Liability Policy purchased by HNTB is subject to a substantial self-insured retention or deductible, which HNTB must satisfy with its own money before that insurer is obligated to provide coverage under its policy.

22. The claims asserted against HNTB in the DeAnda litigation are on account of HNTB's professional liability, which are within the insuring agreement of the Lloyd's Professional Liability Policy, but not the insuring agreements of the Liberty insurance policies.

23. Rather than satisfy its self-insured retention under the Lloyd's Professional Liability Policy, HNTB seeks to obtain reimbursement for its settlement of the DeAnda action under the Liberty policies, described herein.

24. Under well-settled Missouri law, CGL policies are not intended to, and do not, afford coverage for professional liability, errors, or omissions.

25. The Liberty policies are not intended to, and do not, afford coverage for HNTB's professional liability, errors, or omissions.

26. HNTB has failed and refused to provide to Liberty the Lloyd's Professional Liability Policy or to identify the specific underwriters who subscribe to the policy.

27. Following filing of suit and litigation in Riverside County, California, HNTB settled the claims against it for $2.5 million.

28. HNTB has made demand upon Liberty to reimburse HNTB for the $2.5 million settlement that it paid.

29. Liberty had shared in the costs of defending the DeAnda litigation, pursuant to a reservation of rights.

30. Based upon the facts discovered, the legal theories advanced by the claimants, and the language of its policies, Liberty declined to fund the HNTB settlement.

31. Upon information and belief, HNTB has not sought reimbursement for the DeAnda settlement from Lloyd's, and/or the amount of the settlement is within the self-insured retention of the Lloyd's Professional Liability Policy that HNTB is required to fund.

32. The amount in controversy herein exceeds $75,000, exclusive of costs and interest.

33. A real and present case and controversy is presented.

## THE LIBERTY POLICIES

34. Liberty Insurance Corporation issued a commercial general liability ("CGL") policy to first-named insured HNTB Holdings, Ltd. in Kansas City, Missouri, No. TB7-Z41-433035-214, effective December 1, 2014 to January 1, 2016 (as amended by endorsement). *See* **Exhibit A**.

35. HNTB Corporation is a named insured under CGL policy by virtue of the Named Insured Extension Schedule (Form LDS 99 01 10 13).

36. The insuring agreement of the CGL policy provides:

SECTION I —COVERAGES

COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
> . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>
>> (2) The "bodily injury" or "property damage" occurs during the policy period . . .

37. "Occurrence" is defined in the policy to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

38. The CGL policy contains numerous professional liability exclusionary endorsements that exclude coverage for inspection, supervision, quality control, and architectural or engineering activities performed by HNTB on a project.

39. The Exclusion – Construction Management Errors and Omissions endorsement (Form CG 22 34 04 13) provides:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
>
>> 1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

> 2. **Inspection, supervision, quality control**, architectural or engineering activities done by or for you on a project on which you serve as construction manager.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph 1. or 2.
>
> This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

(emphasis added).

    40.    The Exclusion – Contractors – Professional Liability endorsement, (Form CG 22 79 04 13) provides:

> 1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
>
>> a. Providing engineering. architectural or surveying services to others in your capacity as an engineer. architect or surveyor: and
>>
>> b. Providing, or hiring independent professionals to provide, engineering. architectural or surveying services in connection with construction work you perform.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage". or the offense which caused the "personal and advertising injury". involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph 3. below, **professional services include:**

    a. Preparing. approving. or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications: and

    b. **Supervisory or inspection activities** performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

(emphasis added).

41.    Liberty Insurance Corporation issued a Commercial Liability Umbrella policy to first-named insured HNTB Holdings, Ltd. in Kansas City, Missouri, No. TH7-641-443953-374, effective December 1, 2014 to January 1, 2016 (as amended by endorsement).  *See* **Exhibit B**.

42.    HNTB Corporation is a named insured under Umbrella policy by virtue of the Named Insured Extension Schedule (Form LCU 99 05 11/10).

43.    The Umbrella policy's insuring agreement provides:

SECTION I — COVERAGES

1. Insuring Agreement

a. We will pay those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of:

    (1) "Bodily injury";

    (2) "Property damage"; or

    (3) "Personal and advertising injury";

8
Case 4:21-cv-00641-SRB   Document 1   Filed 09/03/21   Page 8 of 12

to which this insurance applies. The amount we will pay for damages is limited as described in SECTION III — LIMITS OF INSURANCE.

. . .

We may, at our discretion, investigate any "occurrence" and settle part or all of any claim or "suit" that may result.

. . .

c. This insurance applies only if:

. . .

(2) The "bodily injury', "property damage" or "personal and advertising injury" is caused by an "occurrence"
. . .

44. The Engineers, Architects or Surveyors Professional Liability Exclusion endorsement to the Umbrella Policy (Form LCU 21 55 10 13) provides:

> A. The following exclusion is added to Paragraph 2. Exclusions of SECTION I — COVERAGES:
>
> > 2. Exclusions
> >
> > This insurance does not apply to:
> >
> > Engineers, Architects or Surveyors Professional Liability
> >
> > Any liability, damages, loss, injury, demand, claim or "suit" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
> >
> > This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

> B. For the purposes of this endorsement professional services include:
>
>> (1) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>>
>> (2) **Supervisory, inspection, architectural or engineering activities**.

(emphasis added).

## COUNT I – DECLARATION THAT THE COMMERCIAL GENERAL LIABILITY POLICY DOES NOT INSURE HNTB'S SETTLEMENT.

45. Plaintiff realleges and incorporates by reference paragraphs 1-44.

46. HNTB's alleged failure to perform its obligations under a contract to supply independent quality assurance services on the subject construction project does not constitute an "occurrence" within the meaning of the CGL Policy or applicable law.

47. HNTB's alleged failure to perform its obligations under a contract to supply independent quality assurance services on the subject construction project does not constitute an "accident" within the meaning of the CGL Policy or applicable law.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiff Liberty Insurance Corporation requests that the Court enter its judgment declaring that the commercial general liability insurance policy does not afford coverage for the DeAnda settlement because the underlying tort claims did not arise out of an occurrence.

## COUNT II – DECLARATION THAT THE COMMERCIAL GENERAL LIABILITY POLICY EXCLUDES COVERAGE FOR HNTB'S SETTLEMENT.

48. Plaintiff realleges and incorporates by reference paragraphs 1-47.

49. The claims asserted against HNTB in the DeAnda litigation arise out of HNTB's performance or malfeasance in the performance of professional services.

50. The claims asserted against HNTB in the DeAnda litigation arise out of HNTB's supervisory, inspection, and/or quality control activities.

51. The claims in the DeAnda litigation and the settlement paid therein are excluded from coverage under the CGL Policy by virtue of the Exclusion – Construction Management Errors and Omissions endorsement.

52. The claims in the DeAnda litigation and the settlement paid therein are excluded from coverage under the CGL Policy by virtue of the Exclusion – Contractors – Professional Liability endorsement.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiff Liberty Insurance Corporation requests that the Court enter its judgment declaring that the commercial general liability insurance policy does not afford coverage for the DeAnda settlement by virtue of the professional liability and errors and omissions exclusions to the policy.

**COUNT III – DECLARATION THAT THE UMBRELLA POLICY DOES NOT INSURE HNTB'S SETTLEMENT.**

53. Plaintiff realleges and incorporates by reference paragraphs 1-52.

54. Because the settlement of the DeAnda litigation does not arise out of an "occurrence," there is no coverage under the Umbrella Policy.

55. Because there is no coverage for the settlement of the DeAnda litigation under the CGL Policy, the settlement of the DeAnda case does not constitute a sum in excess of the "retained limit" of the underlying insurance identified in the Umbrella Policy.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiff Liberty Insurance Corporation requests that the Court enter its judgment declaring that the umbrella policy does not afford coverage for the DeAnda settlement.

### COUNT IV – DECLARATION THAT THE UMBRELLA POLICY EXCLUDES COVERAGE FOR HNTB'S WORK ON THIS PROJECT.

56. Plaintiff realleges and incorporates by reference paragraphs 1-55.

57. The claims asserted against HNTB in the DeAnda litigation arise out of HNTB's performance or malfeasance in the performance of professional services.

58. The claims asserted against HNTB in the DeAnda litigation arise out of HNTB's supervisory, inspection, and/or engineering activities.

59. The claims in the DeAnda litigation and the settlement paid therein are excluded from coverage under the Umbrella Policy by virtue of the Engineers, Architects or Surveyors Professional Liability Exclusion endorsement.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiff Liberty Insurance Corporation requests that the Court enter its judgment declaring that the umbrella policy does not afford coverage for the DeAnda settlement by virtue of the professional liability exclusion to the policy.

       /s/ Angela M. Clark
Angela M. Clark      MO# 52159
John L. Kellogg      MO# 46533
2400 Pershing Road, Suite 500
Kansas City, MO 64108
Telephone: (816) 471-2121
Facsimile: (816) 472-0288
aclark@bscr-law.com
jkellogg@bscr-law.com
ATTORNEYS FOR PLAINTIFF