IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LIBERTY INSURANCE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-cv-00641-SRB |
| ) | |
| HNTB CORPORATION, ) | |
| ) | |
| Defendant. ) | |

# ORDER

Before the Court is Defendant and Counterclaim Plaintiff HNTB Corporation's ("HNTB") Motion for Summary Judgment (Doc. #42); and Plaintiff and Counterclaim Defendant Liberty Insurance Corporation's ("Liberty") Motion for Summary Judgment (Doc. #44.) For the reasons stated below, HNTB's motion is GRANTED IN PART, and Liberty's motion is DENIED.

## I. FACTUAL BACKGROUND

This lawsuit arises out of an insurance-coverage dispute between Liberty and HNTB. The parties dispute whether the commercial general liability and umbrella policies issued to HNTB by Liberty provide coverage for the indemnification of a settlement against HNTB involving bodily injury. For purposes of resolving the pending motions, the Court deems the following facts uncontroverted.[1]

---

[1] The relevant facts are taken from the record, including the parties' briefs and exhibits. Additional facts are addressed in Section III. The parties' respective motions raise similar facts and arguments. The Court has reviewed all briefs and exhibits pertaining to both motions for summary judgment, and the rulings herein dispose of both motions. To provide context and/or where applicable, this Order includes facts and arguments from both parties' briefs. Only those facts necessary to resolve the pending motions are discussed below and are simplified to the extent possible.

### A. The Policies

Liberty issued to HNTB various insurance policies. Liberty issued Policy No. TB7-641-433035-214 to HNTB covering the policy period of December 1, 2014, to December 1, 2015 ("the CGL Policy"). Liberty also issued Policy No. TH7-641-443953-374 to HNTB, covering the policy period of December 1, 2014 to January 1, 2016 ("the Umbrella Policy"). HNTB also had a professional liability insurer, Certain Underwriters at Lloyd's of London, ("Lloyd's") for coverage. The CGL Policy provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. #43-7, p. 24.) Similarly, the Umbrella Policy provides "We will pay those sums in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of: (1) 'Bodily injury' . . . ." (Doc. #43-8, p. 72.) The CGL and Umbrella Policies largely exclude coverage for bodily injury and property damage stemming from negligent inspection or supervision conducted by those whose background would fall under professional services like engineers. The policy exclusions contain similar language

### B. Accident and Allegations

HNTB seeks indemnification for a settlement that resolved claims arising from a worksite accident. The accident occurred during a procedure to lower a 990-ton bridge deck onto the abutments of the bridge. During the lowering process, the bridge deck fell and ten construction workers were injured. The accident stemmed multiple lawsuits against HNTB, which were ultimately consolidated into one case that HNTB settled for $2.5 million (the "Settlement"). Several of the plaintiffs in that litigation alleged that all defendants, including HNTB, were liable for negligence. (Doc. #45-2.)

Following the Settlement Liberty filed this suit against HNTB and asserted four Counts for declaratory judgment: (I) declaration that the CGL policy does not insure HNTB's Settlement, (II) declaration that the CGL Policy excludes coverage for HNTB's settlement, (III) declaration that the Umbrella Policy does not insure HNTB's Settlement, and (IV) declaration that the Umbrella Policy excludes coverage for HNTB's work on this project. (Doc. #1, p. 10-12.)

Liberty now seeks summary judgment on all Claims and Counterclaims in the action. HNTB filed the following Counterclaims against Liberty: (I) declaratory judgment, (II) breach of contract, (III) vexatious refusal, (IV) bad faith, and (V) "failure to provide HNTB with a copy of its claim file." (Doc. #7, p. 17-29.) HNTB moves for summary judgment on Count I of its Counterclaim seeking a declaration that Liberty owes HNTB a duty to defend in the consolidated case ("the Underlying Lawsuit"), and indemnity under the CGL and Umbrella policies for the Settlement.

Further, HNTB also seeks summary judgment in its favor on Liberty's four Counts for declaratory judgment. Each oppose the other's motion. The parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party

3

Case 4:21-cv-00641-SRB   Document 57   Filed 09/22/22   Page 3 of 15

makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.*

## III. DISCUSSION

The parties' primary dispute is whether HNTB is entitled to insurance coverage by Liberty. On the issue of coverage, HNTB claims coverage should be extended because (1) Liberty failed to execute its duty to defend, (2) Liberty has a duty to indemnify HNTB for the Settlement, and (3) Liberty failed to properly issue a reservation of rights. Liberty disputes each of these arguments. Liberty offers three main arguments as to why there should not be coverage for the Settlement. Liberty argues (1) there was a lack of established facts prior to the Settlement, (2) HNTB did not prove that the claims arising from the Settlement were covered by the policy, and (3) HNTB has failed to demonstrate that the Settlement was reasonable. HNTB disputes each of these arguments.

The parties also dispute the application of policy exclusions. Liberty argues policy exclusions preclude coverage. HNTB disputes that policy exclusions apply. The parties' arguments regarding these issues are discussed separately below.[2]

### A. HNTB's Arguments for Coverage

#### 1. HNTB Indemnity Claim

HNTB seeks summary judgment on Counterclaim Count I for indemnity by Liberty. On the issue of coverage, HNTB argues it is entitled to indemnity from Liberty for the Settlement in

---

[2] The parties agree, and the Court finds, that state law controls. According to Missouri choice-of-law rules, "the law of the state with the most significant relationship to the transaction governs." *Viacom, Inc. v. Transit Cas. Co.*, 139 S.W.3d 723, 724–25 (Mo. banc 2004) (citation omitted). Upon review of the relevant factors, the Court finds that Missouri law applies. However, even if California law did apply, the Court finds the outcome would be the same.

4

the Underlying Lawsuit.  HNTB claims the operative complaints from the Underlying Lawsuit alleged bodily injuries that triggered coverage under the CGL and Umbrella policies.  Liberty argues indemnity is not warranted under either policy.

Missouri law provides that the duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example, through summary judgment or settlement.  *McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 173 (Mo. banc 1999).  When a liability policy defines "occurrence" as meaning accident, Missouri courts consider this to mean injury caused by the negligence of the insured.  *Village at Deer Creek Homeowners Assoc. v. Mid-Continent Cas. Co.,* 432 S.W.3d 231, 247 (Mo. App. W.D. 2014).

Upon review of the record, the Court finds there are no genuine disputes of material fact and that HNTB is entitled to indemnity as a matter of law.  HNTB is a named insured under the CGL Policy and the Umbrella Policy.  The CGL Policy provides that Liberty will pay those sums that HNTB becomes legally obligated to pay as damages because of bodily injury to which the CGL Policy applies.  The Umbrella Policy provides that Liberty will pay those sums in excess of the retained limit that HNTB becomes legally obligated to pay in damages stemming from bodily injury covered by the insurance.  The CGL Policy and the Umbrella Policy define an "occurrence" as an accident resulting in bodily injury.

The operative complaints from the Underlying Lawsuit allege HNTB negligently caused plaintiffs' bodily injuries.  They allege HNTB failed to equip the premises with safety devices, failed to provide sufficient warnings, failed to properly maintain the premises, failed to warn individuals involved in the construction, and caused and allowed dangerous conditions to exist at the accident site.  These allegations fall into areas that are covered by both policies.

5

For all these reasons, HNTB's arguments are persuasive. Therefore, HNTB is entitled to summary judgment on Counterclaim Count I for indemnity. Liberty's motion for summary judgment is denied on Counts I and III to the extent those Counts seek a declaration of no indemnity.

### 2. HNTB's Duty to Defend Claim

HNTB seeks summary judgment on Counterclaim Count I seeking a declaration that Liberty had a duty to defend. HNTB argues that it was owed a defense in the Underlying Suit without reservation. Liberty responds that it fulfilled it responsibility in defending HNTB.

Under Missouri law, the duty to defend potentially insured claims arises even if claims beyond coverage may also be present. *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. App. W.D. 2005). The duty to defend arises when there is a possibility or potential for coverage at the outset of the case. *Sprint Lumber, Inc. v. Union Ins. Co.*, 627 S.W.3d 96, 106 (Mo. App. W.D. 2021) (citation omitted).

Here, the plaintiffs from the Underlying Lawsuit alleged bodily injury caused by an occurrence. Liberty was aware and confirmed this based on the multiple reservation of rights letters it sent to HNTB in which it stated, "the complaint alleges an accident, and thus an occurrence." (Doc. #45-31, p. 2.) The allegations in the Underlying Lawsuit created the potential for coverage under the CGL Policy and the Umbrella Policy. Based upon the allegations in the Underlying Lawsuit, Liberty had a duty to defend HNTB. In a letter addressing its reservation of rights, Liberty agreed to share in the defense of HNTB along with any defense provided by HNTB's professional liability carrier through a 50/50 cost split. HNTB's independent counsel confirmed this arrangement. HNTB advised Liberty of HNTB's intention to participate in settlement negotiations and Liberty refused to participate in settlement

6

discussions with plaintiffs. Liberty has offered no precedent or explanation as to why ceasing the defense of HNTB without participating in settlement negotiations should constitute as a full defense. HNTB was owed a duty and Liberty did not execute.

For all these reasons, HNTB's arguments are persuasive. Therefore, HNTB is entitled to summary judgment on Counterclaim Count I for a duty to defend. Liberty's motion for summary judgment is denied on Counts I and III to the extent those Counts seek a declaration of no duty to defend.

### 3. HNTB's Estoppel Argument

HNTB seeks summary judgment on Counterclaim Count I for defense and indemnity by Liberty. In making another argument in support for the Counterclaim, HNTB argues that Liberty failed to issue a proper reservation of rights and is therefore estopped to deny duty to defend and indemnity. Liberty responds that it promptly, effectively, and repeatedly reserved its rights.

"Upon proper notice to the insured, Missouri law permits an insurer to defend its insured but reserve the right to later disclaim coverage." *Truck Ins. Exch.,* 162 S.W.3d at 88. "If the fully-notified insured accepts, the insurer's defense under a reservation of rights will not be considered a denial of coverage." *Id*. However, "the insurer owes the insured a duty to assert a proper reservation of rights that is timely and clear and that fully informs the insured of its position." *Advantage Building & Exteriors, Inc. v. Mid-Continent Cas. Co.,* 449 S.W.3d 16, 22-23 (Mo. App. W.D. 2014). Missouri law requires an insurer to conduct investigation and analysis of the claim "with reasonable diligence" and must "promptly notif[y] the insured of its position once the process is complete." *Id*. at 23. A liability insurer that assumes the defense of its insured should promptly advise the insured of any grounds on which it appears that all or any part of that asserted liability might not be covered. *Id*.

Here, Liberty has presented evidence that it reached out to HNTB multiple times with questions regarding the factual circumstances of the accident and HNTB's role in it. Liberty exercised reasonable diligence to investigate and understand the facts surrounding the bridge collapse. Liberty was also prompt in reserving its rights with HNTB by providing the first of the reservation letters within 14 days of the tender of the first of the underlying lawsuits.

HNTB claims the reservation of rights letters it received from Liberty were vague and ambiguous because they did not give HNTB direction as to what specific conduct would be excluded from coverage. For instance, HNTB details how the letters either reference or set out verbatim the terms of the exclusionary endorsements in the CGL and Umbrella policies.

However, a reservation of rights letter can only be as specific and helpful as the language in the underlying complaints and the information relayed to the insurer by the insured. The parties have presented conflicting facts as to whether HNTB was unable or unwilling to answer requests for pertinent information. Indeed, having a complete understanding of the underlying facts was complicated not just by the plaintiffs in the litigation, but by co-defendants of HNTB who vigorously contested HNTB's version of the facts. Liberty clearly and consistently identified the professional liability exclusions in each of its many reservation of rights letters. HNTB's argument on this point is not persuasive.

### B. Liberty's Arguments for Denying Coverage

#### 1. Liberty Argues There is a Lack of Established Facts

Liberty seeks summary judgment on Counts I and III of its Complaint seeking a declaration that neither its CGL nor Umbrella policies provide indemnity for the Settlement and that it did not have a duty to defend the Underlying Lawsuit. Liberty argues there were no facts

8

established by trial or dispositive ruling and as a result, HNTB is not entitled to any coverage. HNTB disagrees.

As stated previously, Missouri law provides that the "duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." *McCormack Baron Mgmt. Servs., Inc.*, 989 S.W.2d at 173. Missouri law also "recognizes a claim and a settlement agreement as sufficient to establish that an insured is 'legally obligated to pay damages.'" *Busch Props. v. Nat'l Union Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 154656, *12 (E.D. Mo. 2014) (citing *D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.,* 316 S.W.3d 899, 906 (Mo. banc 2010)).

Here, HNTB settled the Underlying Lawsuit following briefing on its motion for summary judgment, but before any ruling on that motion and before trial. It is undisputed that there was both a claim stemming from the Underlying Lawsuit and that the claim resulted in a settlement of $2.5 million dollars. Due to the Settlement, HNTB became legally liable to pay the stated amount. Failure to establish facts by trial or dispositive ruling does not preclude indemnity on behalf of the insured. Because a final resolution via settlement is sufficient to support a duty to indemnify, Liberty's argument is rejected. Therefore, Liberty is not entitled to summary judgment on Counts I and III of its complaint seeking a declaration that the CGL and Umbrella policies do not insure HNTB's settlement. For these reasons, and for the reasons stated above, HNTB is entitled to summary judgment on Count I of its Counterclaim for indemnity.

### 2. Liberty Argues that HNTB Failed to Prove Settlement Arose from Covered Bodily Injuries

Liberty seeks summary judgment on Counts I and III of its complaint seeking a declaration that neither its CGL nor Umbrella policies provide indemnity for the Settlement and

9

that it did not have a duty to defend the Underlying Lawsuit. Liberty argues that HNTB is also not entitled to coverage for the Settlement because HNTB failed to prove that the Settlement arose out of the type of "bodily injury" that is covered by the CGL and Umbrella policies. HNTB disagrees and argues that it was legally liable for claims that trigger coverage.

In general, "an insurance policy is a contract to afford protection to an insured and will be interpreted, if reasonably possible, to provide coverage." *Haulers Ins. Co. v. Pounds*, 272 S.W.3d 902, 905 (Mo. App. S.D. 2008) (citing *Gibbs v. Nat'l Gen. Ins. Co.*, 938 S.W.2d 600, 605 (Mo. App. S.D.1997))."

For reasons like those discussed above, the Court finds that the settlement arose, at least in part, from the type of bodily injury claims that would be covered by the CGL and Umbrella policies. The underlying plaintiffs alleged multiple theories as to the cause of their bodily injury. For instance, they claimed bodily injury stemming from: "Defective BRIDGE DECK and associated structures and members: that at all relevant times, the BRIDGE DECK, formwork, scaffolding, jacks, and other support members and structures; abutments; etc., were improperly designed and constructed, dangerous, and defective." (Doc. #45-1, p.11.) The CGL policy provides that "'bodily injury' or "property damage" caused by an "occurrence" that takes place in the "coverage territory"'" would be covered by the policy. By viewing the plain and ordinary meaning of the policy, the Court finds that the underlying plaintiffs made allegations that would trigger coverage. Liberty's arguments are rejected. Therefore, Liberty is not entitled to summary judgment on Counts I and III of its complaint seeking a declaration that the CGL and Umbrella policies do not insure HNTB's settlement. HNTB is entitled to summary judgment on Count I of its Counterclaim for indemnity.

### 3. Liberty Argues HNTB Failed to Demonstrate the Settlement was Reasonable

Liberty seeks summary judgment on Counts I and III of its complaint seeking a declaration that neither its CGL nor Umbrella policies provide indemnity for the Settlement and that it did not have a duty to defend the Underlying Lawsuit. Liberty argues HNTB failed to demonstrate that the settlement was reasonable. HNTB argues that it does not have a burden to establish the settlement was reasonable.

The insured must show "that he was legally liable to [the injured claimant], and that the amount of the settlement he made and the other items demanded are reasonable, and the burden is on him to so show." *Brinkman v. W. Auto. Indem. Ass'n,* 218 S.W. 944, 946 (Mo. App. S.D. 1920). The test of whether the settlement amount is reasonable is what a reasonably prudent person in the position of the defendant would have settled for on the merits of the claim made by the plaintiff. *Gulf Ins. Co. v. Noble Broad.,* 936 S.W.2d 810, 816 (Mo. banc 1997). The determination involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial. *Id*. "[T]he refusal of the insurer to defend . . . constitutes an unjustified refusal and renders the insurer liable to the insured for all resultant damages from that breach of contract." *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 481 (Mo. App. W.D. 1992).

For reasons like those discussed above, the Court finds that HNTB made a reasonable settlement. As addressed previously, there are claims which the underlying plaintiffs alleged that could have triggered coverage if the underlying plaintiffs had been successful at trial. Further, based on the number of injured plaintiffs in the Underlying Litigation and the nature of their injuries, the record shows that the Settlement was reasonable. Liberty is denying coverage but is continuing to insist upon control of the amount of settlement in the action in which it refused to

11

Case 4:21-cv-00641-SRB   Document 57   Filed 09/22/22   Page 11 of 15

provide coverage. Precedent dictates that when an insurer "unjustifiably refuses to defend or provide coverage, the insured may, without the insurer's consent, enter an agreement with the plaintiff to limit its liability to its insurance policies." *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 710 (Mo. 2011). As mentioned previously, Liberty failed to execute its duty to defend. HNTB has shown that its actions to pursue settlement and the ultimate amount reached were reasonable.

Liberty's argument is rejected. Therefore, Liberty is not entitled to summary judgment on Counts I and III of its complaint seeking a declaration that the CGL and Umbrella policies do not insure HNTB's settlement. HNTB is entitled to summary judgment on Count I of its Counterclaim for indemnity.

### B. Policy Exclusions

#### Liberty Argues that Policy Exclusions Apply

Liberty seeks summary judgment on Counts II and IV seeking a declaratory judgment that its CGL and Umbrella policies exclude coverage for the Settlement. Liberty argues that the following exclusions apply: (1) Exclusion – Contractors – Professional Liability, (2) Engineers, Architects or Surveyors Professional Liability Exclusion, and (3) Exclusion – Construction Management Errors and Omissions.[3] HNTB disagrees. Each policy exclusion is discussed separately below.

##### 1. Exclusion – Contractors – Professional Liability and Engineers, Architects or Surveyors Professional Liability Exclusion

Liberty argues that the professional exclusion services apply due to the contracts HNTB signed and because what "HNTB was doing, with respect to [the bridge], was inspection,

---

[3] The language for the exclusions for the Engineers, Architects or Surveyors Professional Liability endorsement and the CGL Contractors – Professional Liability endorsement are quite similar. Thus, analysis under each policy exclusion produces the same result.

12

supervision . . ." (Doc. #56, p. 21.) HNTB argues it "did not perform supervisory or inspection activities as part of any related engineering activities." (Doc. #48, p. 52)

"The language in a policy is given its ordinary meaning unless another meaning is plainly intended." *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc 1998). The CGL policy's Exclusion – Contractors – Professional Liability endorsement excludes from coverage bodily injury "arising out of the rendering of or failure to render any professional services . . . in your capacity as an engineer . . . professional services include . . . supervisory or inspection activities performed as part of any related architectural or engineering activities." (Doc. #45-27, p. 120.)

Here, the Court finds the Contractors – Professional Liability and Engineers, Architects or Surveyors Professional Liability exclusions do not apply. The record shows that HNTB's employees did not render professional services within the meaning of the exclusion. HNTB has presented evidence that it was not its responsibility to conduct inspections. Rather, the role for HNTB and its engineers was to observe and monitor Quality Assurance[4] and verify that Quality Assurance was performing inspections. Liberty has failed to present evidence that HNTB did not prepare or approve, or fail to prepare or approve, shop drawings, reports, field orders, change orders or drawings and specifications on the bridge project. There is also evidence that HNTB did not perform supervisory or inspection activities as part of any related architectural or engineering activities.

---

[4] Quality Assurance is an independent group that evaluates through detailed inspection.

13

**2. Exclusion – Construction Management Errors and Omissions**

Liberty argues that the Construction Management Errors and Omissions exclusion applies because of the reference to construction management in the "master agreement" signed by HNTB. HNTB disagrees that it held this role during the bridge construction.

The CGL policy's Exclusion – Construction Management Errors and Omissions endorsement similarly excludes from coverage bodily injury arising out of "[P]reparing, approving, . . . specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or 2. Inspection, supervision, . . .or engineering activities done by or for you on a project on which you serve as construction manager." (Doc. #45-27, p. 119.)

Here, the Court finds the Construction Management Errors and Omissions exclusion does not apply. Liberty argues that this exclusion applies because the Project Work Plan required HNTB to provide, as "Task 1," construction management services. However, HNTB has presented evidence via declaration that it was not responsible for performing "Task 1" for the bridge construction. Further, there remains a lack of evidence that HNTB provided Construction Management services as defined by the exclusion.

For these reasons, Liberty's argument regarding policy exclusions is rejected. Therefore, Liberty is not entitled to summary judgment on Counts II and IV of its complaint seeking a declaration that the CGL and Umbrella policies exclude coverage for HNTB's work on the construction project. HNTB is entitled to summary judgment on Count I of its Counterclaim regarding indemnity.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that HNTB's Motion for Summary Judgment (Doc. #42) is GRANTED IN PART.  HNTB is granted a declaration that Liberty had a duty to defend and indemnify under the CGL and Umbrella policies.

It is **FURTHER ORDERED** that Liberty's Motion for Partial Summary Judgment (Doc. #44) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: September 22, 2022